# 18-2146

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

Defendant/Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---

BRIEF AND ADDENDUM FOR APPELLANT
CARLOS J. GUZMAN-MERCED

---

Vivian Shevitz -- Bar No. 101025
46 Truesdale Lake Drive
South Salem, New York 10590
914 763 2122
Fax: 888 859-0158
Email: vivian@shevitzlaw.com

# Table of Contents

Table of Contents ...................................................................................... i

APPENDIX TABLE OF CONTENTS .................................................. ii

TABLE OF AUTHORITIES ................................................................ ii

PRELIMINARY STATEMENT ........................................................... 1

JURISDICTIONAL STATEMENT .................................................... 1

STATEMENT OF THE ISSUES ......................................................... 2

STATEMENT OF THE CASE ............................................................ 3

    The Plea (A-16-34) ...................................................................... 3

    Sentencing (A-35-95) .................................................................. 7

    Presentence Report: Guidelines ............................................... 7
    Sentencing proceeding (A-35-95) ............................................. 8

SUMMARY OF THE ARGUMENT .................................................. 32

ARGUMENT ...................................................................................... 36

    Point I: ........................................................................................ 36

The indictment should be dismissed for failure to plead the element that defendant had to have *known* he was a prior felon under 18 USC 922(g), or the plea must be vacated. ................................................. 36

i

Point II: ....................................................................................................39

The sentence is procedurally and substantively unsound, is greater
than necessary, and is unreasonable.................................................39
Standard of review .........................................................................39
Argument........................................................................................ 41
CONCLUSION ......................................................................................48

## ADDENDUM

Addendum A – Judgment                                    Ad 1-  Ad  6

## APPENDIX TABLE OF CONTENTS

(separately filed)

Docket Sheet, USA v. Guzman-Merced                          A- 1-11

Notice of Appeal                                            A-12-13

Indictment                                                  A-14-15

Change of Plea Hearing                                      A-16-34

Sentencing Hearing                                          A-35-95

Judgment of Conviction                                      A-96-102

Pre-sentence report –        Submitted separately under sealed cover

## TABLE OF AUTHORITIES

Cases
*Gall v. United States*, 552 U.S. 38 (2007) ...............................................42

*Rehaif v. United States,* 139 S. Ct. 2191 (2019) ..................................... 5, 36, 37, 39

*United States v. Lugo-Cartagena*, 701 Fed. Appx. 6 (1st Cir. 2017) ....................42

*United States v. Cossey*, 632 F.3d 82 (2d Cir. 2011 ................................................49

*United States v. De la Cruz-Gutierrez*, 881 F. 3d 221 (1st Cir. 2018) ...................43

*United States v. Del Valle-Rodríguez,* 761 F.3d. 171 (1st Cir. 2014) ....................42

*United States v. Flores-Machiocote*, 706 F.3d 16 (1st Cir. 2013),...........................37

*United States v. King*, 741 F.3d 305 (1st Cir. 2014)................................................44

*United States v. Maisonet-González*, 785 F.3d 757 (1st Cir. 2015) .......................42

*United States v. Martin*, 520 F.3d 87 (1st Cir 2008) ...............................................43

*United States v. Pantojas*, 800 F.3d 54 (1st Cir. 2015) ................................... *passim*

*United States v. Prado*, 933 F.3d 121 (2d Cir. 2019) .............................................40

*United States v. Trinidad–Acosta*, 773 F.3d 298 (1st Cir. 2014) ...........................43

*United States v. Turbides-Leonardo*, 468 F.3d 34 (1st Cir. 2006) .........................46

Statutes
18 U.S.C. §3553 .......................................................................................... 38, 39, 48

18 U.S.C. §922(g) ............................................................................................ 36, 39

Rule
Rule 11, Fed. R. Crim. P ................................................................................. 35, 40

 Other Authority
https://www.policia.pr.gov/division-estadisticas-de-la-criminalidad/....................50

## PRELIMINARY STATEMENT

Defendant-Appellant CARLOS J. GUZMAN-MERCED (hereinafter "Guzman") respectfully appeals from a judgment (Addendum- Ad-1) convicting him upon his plea of guilty to a one-count indictment as being a prohibited person (a convicted felon) in possession of a firearm.

Guzman was sentenced to a term of 72 months' imprisonment and 3 years' supervised release (Daniel R. Dominguez, J.) (Judgment, Addendum hereto; see also Sentencing Transcript, Appendix ("A")-35-95).

## JURISDICTIONAL STATEMENT

This is an appeal from a judgment of the United States District Court for the District of Puerto Rico (Daniel R. Dominguez, J.) entered October 31, 2018 (Addendum Ad-1). Guzman was convicted on his plea and sentenced on April 27, 2016. A timely notice of appeal was filed on November 6, 2018. (A-12).

The District Court had jurisdiction under 18 U.S.C. §3231. This Court has jurisdiction under 28 U.S.C. §1291 and 18 U.S.C. §3742.

## STATEMENT OF THE ISSUES

1. Whether the plea was involuntary and invalid, and was taken in violation of Rule 11(c), Fed. R. Crim. P., because appellant was not asked to and did not allocate to his awareness that he was a prior felon, thus failing to satisfy the "knowledge" requirement stated in *Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019) (holding it is an element of an offense under § 922(g) that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm.")

2. Whether the variant 72-month sentence was procedurally and substantively improper because it is "greater than necessary" in that, though the Guideline range was 41-51 months, the Court gave too much weight to the problem of drug violence in Puerto Rico and rested its variance on factors already taken into consideration by the Guidelines – *i.e.*, that defendant fired the weapon at issue and that defendant was a recidivist --  as well as on the improper and undefined factor of defendant's "proclivity."

## STATEMENT OF THE CASE

### The Plea (A-16-34)

On March 1, 2018, Carlos Guzman-Merced, 23 years old, entered a guilty plea before Magistrate Judge Camille Velez-Rive to a one-count indictment (A-14-15) charging him with "being a prohibited person in possession of a firearm; that being a convicted felon, in violation to Title 18, United States Code, Section 922(g)(1)". Guzman stated he was "aware" that he was pleading guilty to that charge. He agreed he had had enough time to consult with counsel about "today's proceedings." (Plea, 5-6 (A-16 et seq.)).

After stating he waived the right to proceed before District Judge Daniel R. Dominguez, defendant agreed that counsel had "explained" the "consequences of the plea". Defendant knew that – as the prosecutor stated – the maximum sentence was to be "not more than 10 years", a fine could not exceed $250,000, and a supervised release term of no more than 3 years could be imposed. (Plea, 11-12).

The prosecutor reported (Plea 13-15) that, if the case had proceeded to trial, the government would have proven that "on May the 2nd, 2017,

while patrolling the Mayor Cantera area in Ponce, Ponce municipal police officers heard gunshots near the Elegant Barber Shop. While arriving to the barber shop, they observed the glass windows of the barber shop shattered. Subsequently, various citizens advised the police officers that a suspect was running towards a nearby area. Municipal officers responded and observed a skinny male, wearing a blue shirt and short pants, running towards an adjacent area."

The prosecutor continued: "Officers later detained 2 male subjects. At the time of the detention of both subjects, one, which was identified as [defendant] Carlos Javier Guzman-Merced, they were not in possession of any illegal firearms."

"Nonetheless," the prosecutor stated, "further investigation revealed that there was a video recording of the incident from nearby surveillance cameras. The cameras were located in a Shell gas station next to the Elegant Barber Shop. Police officers requested the video recordings and observed two male subjects running near the barber shop, one who was later identified as [defendant] Carlos Javier Guzman-

Merced. In the video, agents observed Guzman firing a pistol with an extended magazine towards the barber shop."

The prosecutor stated: "Later, Homeland Security Investigation agents were contacted and responded to the Homicide Unit of the Puerto Rico Police. There, agents read Carlos Javier Guzman Merced's Miranda Warnings which he understood by signing a form and decided to speak to officers."

Guzman immediately confessed that he was involved, but stated it was self-defense. He stated he had gone to the Elegant Barber Shop to get a haircut, and also to collect, from Nelson, a debt of $800. Once he arrived to the barber shop, gunshots were fired at him from inside the business and he subsequently shot back, and that he did it on self-defense.

The prosecutor reported that "Puerto Rico police officers seized approximately, 61 empty shell casings of .40, .45, and 9 millimeter caliber inside the barber shop and in the parking area of the business." Further, "Homeland Security agents analyzed the videos from the shooting incident and determined that the subject shooting back with the firearm

and with the extended magazine in the video, was in fact, Carlos Javier Guzman-Merced."

Further investigation "revealed that Carlos Javier Guzman Merced was previously convicted for a felony at the state level, punishable by imprisonment for more than one year. The investigation also revealed that no firearms, including the firearm that was in possession of Guzman Merced, was manufactured in the Commonwealth of Puerto Rico."

The Magistrate Judge asked defendant if he "believe[d] that the Statement of Facts is accurate?" Counsel stated that his client "will only admit guilt as to the essential elements of the offense. (Plea, 14-16).

After the Magistrate Judge advised Guzman he could appeal the guilty plea "if you believe that your guilty plea was somewhat unlawful or involuntary, or if there is another fundamental defect in the proceedings that was not waived by your guilty plea", and could also appeal his sentence "under certain circumstances, particularly, if you think that it is contrary to law", the Magistrate Judge turned to the plea.

She asked: "You have indicated to the Court that you're aware of the content of the indictment. So I ask you, how do you plead to Count 1?" The defendant stated: "Guilty." (Plea, 16-17).

## Sentencing (A-35-95)

### Presentence Report: Guidelines

According to the Amended Presentence report (DOC 58, 8/28/2018, submitted separately under seal), the Guidelines for this offense, to which Appellant pled guilty, covered the conduct of unlawfully possessing a semiautomatic firearm cable of accepting a large capacity magazine by a prohibited person, *and* the conduct of brandishing and discharging the firearm. It also accounted for the previous criminal conduct in the criminal history score. Specifically (PSR p.6):

**Count One**: **Prohibited person in possession of a firearm: convicted felon**

19. **Base Offense Level:** The guideline for a violation of 18 U.S.C. § 922(g)(1) is found in USSG §2K2.1. The unlawful possession of a semiautomatic firearm that is capable of accepting a large capacity magazine by a prohibited person: convicted felon, warrants a base offense level 20, pursuant to USSG §2K2.1(a)(4)(B).                                                                **20**

20. **Specific Offense Characteristics:** Since the defendant used or possessed the firearm or ammunition in connection with another felony offense, that is: the defendant brandished and discharged the firearm, a 4 level increase is warranted, pursuant to USSG §2K2.1(b)(6).4                                           **+4**

21. **Victim Related Adjustment:** None.                                         **0**

22. **Adjustment for Role in the Offense: None.**

**0**

23. **Adjustment for Obstruction of Justice:** None.                                    **0**

24. **Adjusted Offense Level (Subtotal): Twenty-four.**                        **24**

25. **Chapter Four Enhancement:** None.                                             **0**

26. **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by 2 levels, pursuant to USSG §3E1.1(a).                       **-2**

27. **Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by 1 additional level, pursuant to USSG §3E1.1(b).

28. **Total Offense Level: Twenty-one.**                                          **21**

The defendant's criminal history category was II. The statutory maximum was 10 years.

The Guidelines called for a sentence of 41-51 months' imprisonment.

### Sentencing proceeding (A-35-95)

Naturally, the Court was concerned with the shootout in which defendant had been involved. Counsel tried to make it clear – and the video showed – that the 61 shell casings were "not fired by the defendant" but at least most of them by the people who "fired against him" from inside the barbershop. (Sentencing, 7-8).

As defendant had said in his statement, he had shot in self-defense. When he was being shot at, he took cover, and eventually tried to get away from the shooting by leaving the scene. That was when police arrested him. The people inside the barbershop were not arrested. The video did not reveal their identities. (Sentencing, 8-9).

Judge Dominguez then interjected that Guzman had started the episode by going to the Elegant Barbershop to get a haircut to collect an $800 debt from Nelson, who worked at the barbershop, "for an alleged .45-caliber pistol firearm Nelson had stolen from him." Defendant had stated further that "once he arrived to the barbershop, gunshots were fired at him from inside the business; that he subsequently shot back, and that it was in self-defense." The Court stated that Joshua Colon-Diaz, the person with Guzman when he was arrested, was not armed and asked, "So how did he fire out?" (Sentence 9)

Counsel explained that Colon Diaz was not one of the guys inside.

The Court then interjected, commenting about the evidence that would have come out at trial. The Court said that the pistol "which he fired was a 9mm Wesson pistol; that he had dropped it while running

9

from the barbershop." The Court then commented about defendant's admission of being, essentially, an addict: "Also, Carlos Javier-Guzman admitted to agents that he takes five to ten Percocet pills daily and that he has been taking them for a long time now."

At that, Judge Dominguez told defense counsel to "go ahead." (Sentence 9).

Counsel stated that the Court's recitation of what defendant said, was "not inconsistent with my position regarding what the video portrays. It's basically exactly the same." After the defendant arrived, "he was shot, he shot back, and then he tried to leave the scene, and the police came in and arrested him. He didn't resist arrest. He admitted what had transpired. So the Court should take that into account as to the honesty as to the defendant."

Counsel started to add that the "main issue that we have here is that this defendant –", but the Court interjected: "This defendant had a weapon that he shouldn't have had, right?" Counsel said "Agreed", pointing out that "that's why he pled guilty."

Counsel started to say that there were other things the Court should consider: "But the Court should also take into consideration his personal characteristics, and it is –"  Again cutting off defense counsel, Judge Dominguez stated he "ha[d] it clear.  But", he immediately added, "the problem is that the crimes that he has had were way after he left the school. So he got worse; is that it? Before, we had a mental problem, and now we have a guy with a mental problem that is using weapons." (Sentencing 10).

Counsel attempted to mitigate, telling the sentencing judge that defendant's father is a known drug user, who injected himself in defendant's presence when defendant was a child.  Defendant did not pass 7th grade.  No one had ever paid attention to the mental health issues, or defendant's learning disability.  That is what accounted for his getting progressively worse.  (Sentence 11).

The Court turned back to the offense.  It stated that, according to the presentence report, "the municipal police officer observed the defendant firing a pistol with an extended magazine toward the barbershop."

Counsel stated there were no municipal police at the scene. They arrived "maybe, six, seven minutes after the shots were fired and a 911 call …." The Court insisted: "It says that the municipal police officers observed the defendant firing a pistol with an extended magazine toward the barbershop. This is what it says."

The Probation Department chimed in that the information came from the government: "PROBATION OFFICER: That's the information we got, Your Honor. The Government can, maybe, express their position."

AUSA Contreras then stated that he had "more information" but "to answer the direct question, it's our understanding that -- I believe it was 60 or 61 spent cartridges in total that were found, and it covers, my understanding, three separate calibers, but there's no indication of how many spent casings relate to caliber." He reported that it was his "understanding" that the "9mm casings represent what the defendant fired."

The Court then stated it "says here approximately 61 empty shells of .40, .45, and 9mm caliber were inside the barbershop and in the parking area of the business." AUSA Contreras said it was his

understanding "that the incident started in the barbershop, and the defendant fired and fled at the same time. And then he is -- the video only captures when he fires in the, I guess, gas station would be an accurate representation."

AUSA Contreras stated that the defendant was "correct", that police arrived "very soon after the shooting, but it's our understanding no police officers witnessed the shooting." The Court responded: "Okay. So this is a mistake. `The municipal police officers observed the defendant firing a pistol,' that's wrong."

The Probation Officer then stated the Court was correct, and that the information – wrong information – were "facts" from the agent's report –" - that information is taken from the agent's report. "So this is a mistake" (Sentence 13).

AUSA Contreras then provided information from a different AUSA, reporting that "Ponce Municipal Police Officers explained that while patrolling the area, they heard gunshots near the shop. Upon their arrival, they observed the glass windows shattered." They saw a suspect running, and arrested defendant. They also detained another individual,

Colon-Diaz. "'None of these two individuals' -- meaning the defendant and Colon-Diaz -- 'were armed at that time, however, they were placed under arrest pursuant to the information the officers had received from bystanders.'" (Sentence 13-14).

The Court then stated it had "made the adjustments." However, its thinking was apparently not adjusted because the judge returned to the topic that the firearm was discharged.

Judge Dominguez stated: "But it still leaves him with a second weapon violation. And it was discharged, right?" Counsel stated that was true, that they "do not dispute that", but "clarified" that "that first conviction he had for simple possession of a firearm in state court was when he was a minor." (Sentence 14-15)

Defense counsel then argued that defendant "would be better served with treatment instead of a high incarceration period because, again, the chance of recidivism would not be related to how much time he serves in prison, but how do we tend to the problems that he had because -- he doesn't even have a GED, Your Honor. At this time, I don't think he would be able to –" The Court asked why defendant did not have a

GED.  Counsel stated "he has a learning disability that has not been treated, Your Honor."  The Court stated, "Okay.  I see.  (Sentence 15).

Counsel continued, informing the Court that it was "not correct" that authorities had "tried to provide services and that defendant `abandoned school.'"  Rather, the defendant "flunked seventh grade on two separate occasions."  Unless there was a modification that helped defendant's life, "he will not get a GED."

Counsel then asked for the lower end of the Guideline range -- which was 41 months imprisonment.  This is a man who had the "worst" of upbringings.  His mother was not available.  She was residing in New Jersey.  Counsel stated he had "kept calling and calling."  Defendant simply had no support.

The Court went back to the offenses.  Defendant has had two criminal cases.  The first was violence against a public authority.  Shots were fired at a cop.    This case is the second one, involving getting into a shooting with an illegal weapon.    The Court said it is a crime of violence.  Even if this was self-defense, "still the pistol is being used

illegally." The next one", said the Court, could be "three strikes and you are out." (Sentence 17)

There was more back and forth about the prior crime. Counsel clarified facts about the offense committed when defendant was 17 years old, the prior felony: "the use of violence against authorities in state court was not that he or the defendant that was arrested with him fired the weapon against the officers." Rather, "[w]hat transpired in that case was that the other defendant was the driver of the vehicle that was -- apparently sped towards those police officers, and that's why they were arrested."

The Court then referred to the official court document, reading: "On April 2, 2012, in Ponce, Puerto Rico, Carlos Javier Guzman-Merced, the defendant, illegally, voluntarily, maliciously and criminally, aiding and abetting with Marvin Santiago-Acevedo possessed two firearms, to wit: A black and gray Ruger pistol, Model P95, 9mm caliber, loaded with 15 bullets; and a black Smith & Wesson revolver, .38 caliber, loaded with five bullets. The defendant and Mr. Santiago-Acevedo used physical violence and intimidation against two police officers by driving the motor

vehicle they were using and which was object of the intervention. This resulted in both officers jammed and with minor injuries."

The Court then mused about whether it was a "crime of violence," stating: "Well, I don't know if they are going to consider that or not a crime of violence, but anyway, ours is today a crime of violence."

Directing comments to the defendant, the Court scolded: "So if you are again caught with a crime of violence, sir, that is, drugs and weapons, stealing and weapon, stealing of a bank with a weapon, stealing of a drugstore or store, carjacking with a weapon, all of those, sir, will qualify as a third offense. Anything you do with a weapon, sir, may constitute a crime of violence, and you are only entitled to three of them. I think you may have two already. Do you understand that? So the third one is horrible. It's life. I am not annoyed. I just want you to understand what's going on here today. All right." (Sentence 19)

The prosecutor then stated that he wanted to show the Court two clips from the video to show "what the defendant actually did that day", to support a variant sentence of 96 months' imprisonment (instead of the 41-51 months the Guidelines provided). The prosecutor advised the

Court that it would see two men, defendant and the other man, and they were dressed in a similar way, "so the Court could get confused." (Sentence 20-21).

The prosecutor played and paused a clip, stating that the Court would see the defendant "about to shoot." The Court stated it "looks like a long type of –", and the prosecutor stated, "Extended magazine. There is no doubt in anyone's mind, it is an extended magazine. (Sentence 21).

Defense counsel stated that he was not disputing that it "looks like an extended magazine." He argued that "it is included in the base offense level." (Sentence 22).

The prosecutor played more of the video, trying to argue that this was not "self-defense" because defendant "stopped" and turned back to "get better aim", and then continued. When a second clip was played, the Court asked what defendant was "picking up there." Both the prosecutor and defense counsel stated he was not picking up anything, but just "lowered to cover." (Sentence 23).

On the video the Court also saw the other man, Colon-Diaz, trying to get into somebody's vehicle, and then the owner, an "older gentleman", got in at the same time. Colon-Diaz then got out and left.

This prompted Judge Dominguez to say "Wow." (Sentence 24).

Turning to the Guidelines and the sentence, the government stated that, though the Guideline range was 41-51 months, it was asking for more than twice as much, 96 months, primarily because of the scourge of gun violence in Puerto Rico and because of the number of bullets in this case. Quoting this Court's decisions approving of consideration of "community-based and geographic factors," the government argued (Sentence 25-26):

> … possession of illegal firearms has become an epidemic in the Commonwealth of Puerto Rico. In 2011, the Commonwealth had a record of 1,136 murders. In response to this epidemic in late 2011, the Commonwealth of Puerto Rico entered into an agreement with the United States Department of Justice to prosecute a wide range of firearm offenses occurring in Puerto Rico at the federal level. This is one of those cases. The Court should take into consideration Puerto Rico's crime rate, and the Court can take into consideration Puerto Rico's crime rate and its impact in the community at sentencing in this or any other case.

And we would like to cite as authority *United States versus Pantojas-Cruz,* cited at 800 F .3d 54 out of the First Circuit in 2015. That Court stated, and I quote, "In making sentencing determinations, district courts may consider community-based and geographic factors, including the incidence and trend lines of particular types of crimes in the affected community." Continuing with a quote, "In weighing the impact associated with the particular crime, a sentencing court may consider the pervasiveness of that type of crime in the relevant community."

The government argued that "as a felon, the defendant knew he could not possess firearms legally; therefore, he voluntarily obtained a firearm illegally." (Sentence, 26).

As argued below, there was no evidence – no admission of the defendant at the plea or otherwise – that defendant "knew" he was a felon who could not possess firearms.  His prior sentence was suspended, according to the PSR.

As to defendant's claim of self-defense, the government faulted defendant for going to the barbershop to collect $800 from "Nelson" for Nelson taking his firearm.  It argued that "a firearm is not an ornament. … With a single pull of a trigger, the defendant could have killed another person during this incident."  (Sentence 27).

The government argued that what was "scary about this case" is the defendant's prior history and characteristics." He was convicted as a juvenile and sentenced to 12 months; he was also convicted at age 17, and the case was transferred to adult court. Because this is the "third conviction for firearms," the prosecutor argued, the Court should not be "so lenient as to give this defendant 41 months", because it sends the wrong message.

At this time, the Court again looked at the video to count the shots that defendant (could have) fired. The prosecutor stated "we have shots that he fired that are not on the video." (Sentence 30-31).

There was discussion then about how many shots it "look[ed] like" from the video clip. The prosecutor "believe[d]" that "when he stops, turns around, and fires, it appears like there is two shots there …. He is shooting behind him while running …" The prosecutor continued, "just because the video quantity, you can't see the shots, there is no reason for him to be pointing a gun …." (Sentence 32).

The Probation Officer jumped into the fray : "PROBATION OFFICER: He came already firing. Maybe he was firing already before

-- prior to this specific moment."  (Sentence 33).

Defense counsel stated he did not agree with the prosecutor's interpretation of how many shots defendant fired, but agreed that defendant appeared to shoot multiple shots.  That is why he pled guilty. The prosecutor agreed there were "blind spots" in the videos, so they did not really know.  (Sentence 34).

The Court turned to prior convictions.  It first asked about "the other federal case", but counsel stated there was no prior federal case. This is the first one.  He was 22 at the time of this incident.  His first brush with the law was at age 16, and "we have one at 17."  (Sentence 34).

Defense counsel then addressed the government's request for a variant sentence.  He countered the government's suggestion that a Guideline sentence would be "tantamount to a slap on the wrist both on the defendant and the community".  He argued that the Guidelines consider the 41-51-month sentence "reasonable."  The fact that there was an "extended magazine," to which the government "is continually making reference … as an element that the Court should take into consideration",

is already a factor in the Guidelines. (Sentence 35).

To the argument that defendant "should have run" instead of turning back to shoot at the people who shot at him, counsel stated that he was "doing both." Counsel cautioned against "trying to interpret what his state of mind was when some people started shooting at him." (Sentence 36).

Counsel also argued that, if the government was so preoccupied with making an example of this defendant for illegal gun conduct, why did the police *not* arrest and charge "everyone that shot weapons in this case." There was no controversy that those inside shot first.

The Court asked: "Does it really matter?" Defendant knew when he went with a weapon "that that could happen." (Sentence 37).

Defense counsel again responded. Defendant "shouldn't have" retaliated, but that is why there was an "additional plus four" in the Guideline range assigned for this conduct. (Sentence 38). The Guidelines already accounted for this behavior: defendant received four extra points for brandishing/ discharging the firearm, pursuant to USSG §2K2.1(b)(6).

The Court finally turned to imposing sentence at page 39 of the 61-

page sentencing transcript.   The Court told defendant he was "entitled to make an allocution."  Defendant said:

> Nothing.  I wish my mom was here.  She was here, but due to the hurricane and the whole aftermath, she had to leave to be able to work.  My wife left with my daughters as well.  I wanted to apologize to them and ask forgiveness from them.  I want to be able to move ---

The Court then cut off defendant, telling him:  "That you can do, sir."

Judge Dominguez said there was less crime in North Carolina, where defendant's mother was working.

> Try to stay away from the big cities. Look for a job in a place where it's more away from the big cities, and get yourself a good job. Try to get an education. Try to receive education in something that you like, all right. Try to get education and/or vocational training in things that you like. You may want to be a plumber. You may want to learn about cars. You may want to learn about how to paint cars. Do something while you are in prison, sir. Don't stay there looking at the four walls.

Defendant stated he understood.   (Sentence 40).   Defendant never finished the thought he was expressing when he first began to speak.

The Court noted the Guideline base level was 20, pursuant to USSG §2K2.1, for "an offense involving an unlawful possession of a semiautomatic firearm that is capable of accepting a large-capacity

24

magazine by a prohibited person, that is, you were a convicted felon …."
Since the firearm was brandished and discharged, 4 additional points
were added. Since defendant accepted responsibility, 3 points were
deducted. The Guideline range was 41-51 months, plus a fine and
supervised release. (Sentence 41).

The Court briefly acknowledged individual factors as follows:

Mr. Guzman-Merced is a 23-year-old resident of Ponce
who is married but has no dependents. The defendant
completed a sixth-grade education and was unemployed at the
instant offense. The defendant is in good physical health. He
was diagnosed with learning disabilities, and also we find that
he has a mental disorder related to his ability to learn, and
the mental disorder is reflected within the education that he
cannot receive. He did not twice pass seventh grade. So he has
a mental disorder. There is no doubt about that. Now, Mr.
Guzman-Merced has a history of abusing marijuana. On May
3, 2017, the defendant stalled to provide a urine sample.

This is Mr. Guzman-Merced's second known arrest and
conviction, and he has a juvenile adjudication. So this is really
his third time. Now, I have to stress the following:
Notwithstanding his disability problems which were known
in seventh grade, this defendant has a minor violation
precisely dealing with a weapon -- that's right, Article 504 --
and he was provided two points for this, and one additional
point for the second weapon offense. The first one was at age
16, and here goes the second one. He has a violation related
to using a firearm, and he was carrying and using a firearm,
which he could not have under local court, and he was found

25

responsible there as to having also used the weapon -- having the weapon when he had a problem with a police relating to a vehicle that was hit by him -- he used the vehicle to hit the policeman, and he was found there to have weapons also.

The Court asked defense counsel whether he "agree[d] with that description" of defendant's prior offense. Counsel stated he agreed that a weapon was found in a vehicle in which defendant had been a passenger. (Sentence 43).

Judge Dominguez continued that "now we have this case", where another vehicle was used and (again) he went to the barbershop where "they were waiting for him because there were other people that shot against him"… [T]he problem is that it is he who goes to the barbershop. The barbershop did not go to him. And he goes there to collect from one of the persons that were using or employed at the barbershop. He went to collect the weapon. So he went there." (Sentence 43).

The judge stated that, having seen two videos -- "in one of them … he was running away, and he shot at least once …" – and the judge started counting how many shots were fired again. (Sentence 44-45). The Court speculated:

THE COURT: Then I saw Video 5, where the Court showed that he -- it looks, to the Court, that he fired four shots.

Now, the Court, in seeing Exhibit Number 1, also notes that that was a long type of magazine.

MR. CONTRERAS: For the record, Video 2.

THE COURT: I don't know if it's 20 or 24, but it was an instrument that the Court deems that it had at least 20 to 24 bullets. [Sentence 45]

The judge said that there were 61 empty shells around, and "this could have resulted in serious bodily injury or death of others." (Sentence 45).

Judge Dominguez then ruled that an upward variant sentence was warranted under the case to which the prosecutor had pointed in asking for a variant sentence, *United States v. Pantojas*, 800 F.3d 54 (1st Cir. 2015) (upholding procedural and substantive reasonableness of his upwardly variant sentence on the ground that Pantojas was also charged with murder in the Puerto Rico state courts using the subject weapon).

Judge Dominguez stated his reason for a variant sentence in this case: defendant, "in a short age, from 16 to 22, … has three weapons violations." The Court said he was "punished in all three of them – I mean, at least on the two prior ones and now." "So the Court deems that the period of 41 to 51 months is too short a period for this third offenses." (Sentence 46).

The Court stated that, because it was his third time and defendant had gone to the barbershop and then stopped and took aim during the instant offense, it showed "proclivity":

> [T]he Court deems that since this is the third time that he has engaged in this conduct, and in this time it was him who went to the barbershop armed and, unfortunately, they were waiting for him to collect a weapon which was stolen by him, by the person who is stated in the barbershop, a serious shooting, therefore, was there. And the Court examined the videos, and in one, four bullets were fired. That's Video 5. And Video 2, the Court finds that at least two were fired. And in one of them, he actually stopped and took aim at something. So the Court deems that this is now his third serious offense, and notwithstanding his mental problems or his -- which were found at the age of -- prior to age 16 and 17. So he continues, notwithstanding, **with his proclivity**. [Emphasis added]

"So, therefore," the Court wrote, "the Court provides a variance." It stated it "therefore, deems that he is to be incarcerated for a term of 72 months."

Himself suggesting unnecessary harshness, Judge Dominguez first stated he would impose a six-month home confinement term after the 72 months' incarceration, but immediately changed his mind: "You know what? I am not going to impose this condition. I think that 72 months is sufficient. No six months addition in home – at his home." (Sentence 48)

The Court then told the defendant to listen to the next "important condition" and told the defendant he could expect a search of "his person, property, house, residence, vehicle, papers, computers, and other electronic communication or data storage device or media, to a search at anytime, with or without a warrant, by the probation officer and, if necessary, with the assistance of any other law enforcement officer, with reasonable suspicion concerning unlawful conduct or a violation of condition of probation or supervised release." (Sentence 49).

During this important advisement, the defendant was addressing his counsel, apparently trying to process his sentencing.

The Court then advised that the government could also search his phone while defendant was on supervised release, "only if there is reasonable articulable suspicion." It then instructed defendant to "listen to me carefully" and told him his supervised release would be "in the United States" and there would be "no objection that you go to the United States" to serve the supervised release term." Further, "their job is to follow you", "they are going to be watching you", "they are not running a Mickey Mouse operation."

Judge Dominguez said the job of supervised release was to "watch" his "proclivities", whether it was "to shoot people" or "proclivities to steal banks, or whatever." (Sentence 50). When defendant told the Court he wanted to stay in the United States, the Court told the defendant the condition "applies in the United States also. This is not just for Puerto Rico." (Sentence 51).

The Court ordered that defendant participate in an "approved substance abuse monitoring and/or treatment services program," somehow to be approved by the probation officer. (Sentence 52).

After the Court imposed sentence, defense counsel objected to the sentence as being both procedurally and substantively unreasonable. (Sentence 54). That prompted the judge to comment further, about sentencing a defendant who made a plea agreement (after which the Court was reminded that this was not a plea agreement):

> THE COURT: I don't think it's an illegal sentence because the statutory maximum is ten years. But the Court can never give a person that makes a plea agreement the maximum sentence because then no defendant will accept that his conduct was illegal. So he could have been sentenced today to 120 months, but I didn't sentence him to 120 months. I sentenced him to 72 months, which is over the guideline, but

I can do it based on the fact that this is his third conviction in six years.

 [AUSA] CONTRERAS: Your Honor, I believe he did a straight plea.

 THE COURT: Yes, it was a straight plea, but he gets – [Sentence 54]

After the 72-month term was imposed, the prosecutor told the Court that defendant had "looked in this direction … with [what the prosecutor termed] a nasty face".  The Court said, "Okay"; the prosecutor went on: "I don't care that he is not satisfied with his sentence."  (Sentence 55).

The Court addressed the defendant again invoking the weapon problem in Puerto Rico and defendant's recidivism as the reason for the sentence:  "Sir, don't look at him. Sir, the sentence that the Court has emitted today is because this is your third violation of a weapon charge in six years and because Puerto Rico has a problem with persons like you, who are minors when you were using a weapon, and continued the illegal use of weapons for two more times after your first conviction."  (Sentence 55).

Finally, the Court ordered drug treatment, which (the Court noted) the defendant had "never received", though he was "addicted to marijuana"; and further ordered psychiatric and psychological help.

(Sentence 55-56). Counsel asked again that the record reflect an objection to the sentence being both procedurally and substantively unreasonable (Sentence 56).

As the Court was finishing up, it noticed defendant's annoyance. The defendant spoke up, upset: "It's seven years. You think she is going to wait for me for seven years?" (Sentence 57). The Court said that, for a sentence of 72 months he would only have to serve 62 months, and had served 15 already. So, the Court said, "subtract a full year. Sir, around 45 or 46 months, you will be out of here, of all prisons, but you have to behave …." (Sentence 57-58). Before adjourning, the Court wished the defendant good luck. (Sentence 60).

## SUMMARY OF THE ARGUMENT

1. The plea was involuntary and unknowing and in violation of Rule 11, Fed. R. Crim. P., in that defendant was not required to and did not admit he knew he was a prior felon and was not advised that a jury would have to find that he knew. Under *Rehaif v. United States,* 139 S. Ct. 2191, 2200 (2019), an element of a crime under 18 U.S.C. §922(g) is that the defendant "knew he belonged to the relevant category of persons

barred from possessing a firearm."

Defendant did not allocute to this element. He was not asked about it. His record, according to the PSR, showed that when he was 17, he was prosecuted for a "use of violence against public authority" by having been in a vehicle with another person, that drove into police officers, jamming them with minor injuries, and by carrying and using firearms without a license, also a 4th degree felony.

According to the PSR, defendant was not incarcerated, however. He was sentenced in State court to 1 year of imprisonment for each count to be served consecutively, but sentence was suspended to a probation term. (PSR p.8). According to the PSR, defendant attended a court-ordered substance abuse treatment, but there was no follow-up after he presented with "a pattern of absenteeism." The Report noted defendant was "observed lacking social skills and immature in conflict management and decision making." After he tested positive for marijuana, a relapse plan was "accorded", but defendant was terminated from the program.

It does not appear on the record that defendant knew (even if he should know) he knew he was a prohibited person, as *Rehaif* establishes

is required.

Indeed, the indictment did not charge that defendant had to have known he was in the status of prior felon. The indictment should be dismissed. If the indictment is not dismissed, nonetheless, the plea should be vacated, because the plea proceeding did not comply with Rule 11 and/or defendants' plea was unknowing and involuntary. A factual basis was not established.

2. The sentence was unreasonable because the Court focused too heavily on the fact that this was defendant's third offense and that there was gun violence in Puerto Rico. Those were factors already taken into consideration in the Guidelines, unlike *United States v. Pantojas*, 800 F.3d 54 (1st Cir. 2015).

While this Court has made clear that it is proper to consider, for sentencing purposes, the pervasiveness of guns and gun violence in the local community, *United States v. Flores-Machiocote*, 706 F.3d 16 (1st Cir. 2013), that is a factor "that must be weighed" against under factors under 18 U.S.C. §3553(a)(2).

In *United States v. Pantojas*, 800 F.3d 54 (1st Cir. 2015), the Court

sustained a variant sentence (of 60 months) for a defendant who not only committed the 922(g)/prohibited person offense, but was charged in State court for murder using the same weapon. The defendant also had prior drug convictions.

Here, in contrast, the defendant committed the crimes for which the Guidelines provided reasonable penalties. The district judge overemphasized the "community concerns" at the expense of the individual concerns shaping this defendant, by focusing only on the fact that this was defendant's third use of weapons, without ascertaining that he had *not* been jailed or helped through educational or psychological programs in those previous incidents.

Unlike *Pantojas,* the purported basis for the variant sentence here, there was no real reason for varying from the Guideline sentence, 41-51 months.

The main factor the Court identified other than prior conduct and characteristics of the offense – already included in the Guidelines – is a factor *not* identified in the Guidelines or in 18 U.S.C. §3553 – to wit, "proclivity." To the extent this is a proper factor, it is difficult to see how

it is a factor different from the Guideline factors, or how a sentencing court can judge it. The 72-month sentence for a crime invoking a range of 41-51 months, is greater than necessary and is not supported by any factor other than the community concern over gun violence. Sentencing this defendant harshly will not solve that problem.

## ARGUMENT

### Point I:

**The indictment should be dismissed for failure to plead the element that defendant had to have *known* he was a prior felon under 18 USC 922(g), or the plea must be vacated.**

In *Rehaif v. United States,* (2019), *supra*, the Supreme Court held that, in a prosecution under 18 U.S.C. §922(g) and §924(a)(2), "the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Here, the indictment did not charge that "knowledge" element. (Appendix A-14-15). Consequently, the indictment should be dismissed.

Even if the Court does not order the indictment dismissed, the guilty plea should be vacated for failure to satisfy Rule 11, and for failure

to assure a knowing and voluntary plea. The Court did not inform the defendant that in pleading guilty, he was giving up a right to have the jury decide the element that he knew he was in the class of prohibited person to which this statute applies. A factual basis was not established.

The fact that defendant pled guilty does not satisfy the failure to establish a factual basis for the plea. As in the recent Second Circuit case of *United States v. Prado*, 933 F.3d 121 (2d Cir. 2019), a case involving whether the element of "statelessness" of a vessel was jurisdictional or not, and whether vacatur of the guilty plea was required when that element of the crime was not explained to defendant, there was no factual basis established.

Here, because the knowledge element of the prohibited persons federal weapon prohibition was not explained or inquired of, for the same reasons as were explained in *Prado,* the plea procedure did not adhere to the requirements of Fed. R. Crim. P. 11(c), which requires the Court to "determine that there is a factual basis for the plea."

As *Prado* explained in response to the government's argument that a guilty plea waived all defects other than jurisdictional defects: "The

rule advocated by the government—that a guilty plea waives all defects except to the court's jurisdiction—applies only to valid guilty pleas, and the defendants' guilty pleas were defective."

"Rule 11 does not allow the court to assume that a pleading defendant understands the charge because its nature has been the subject of discussion and argument by the defendant's counsel. A plea of guilty requires the personal participation of the defendant, and the court is obligated to inform the defendant of the nature of the charge."

Nor is it clear from the record that defendant appreciated his status as prior felon. He did not say so. Only counsel admitted he "qualified" as a prior felon.

Moreover, there is substantial doubt from the criminal record that defendant knew he was a prior felon because he was not incarcerated for the prior felony. According to the PSR, the jail term for the prior State felony was suspended.

The guilty plea should be vacated even if the indictment is not dismissed for failure to allege a required element, for failure at the plea to satisfy Rule 11 or to establish a factual basis for the guilty plea.

**Point II:**

**The sentence is procedurally and substantively unsound, is greater than necessary, and is unreasonable**

**Standard of review**:

The First Circuit has established a two-prong standard of review of an Appellant's contention that the District Court abused its discretion issuing an unreasonable sentence. *United States v. Lugo-Cartagena*, 701 Fed. Appx. 6, 9-10 (1st Cir. 2017); *see also United States v. Maisonet-González*, 785 F.3d 757, 762 (1st Cir. 2015). If the Appellant properly objected during the sentencing hearing to the unreasonableness of the sentence imposed – which *is* the case here -- the Court Appeals will determine whether the District Court abused its discretion by imposing an unreasonable sentence. *United States v. Del Valle-Rodríguez,* 761 F.3d. 171, 176 (1st Cir. 2014).

The first step of the analysis requires an evaluation of the calculation of the appropriate applicable guideline range. *Gall v. United States*, 552 U.S. 38, 49 (2007). The appeals court must analyze afterwards if the sentence imposed is procedurally unreasonable. A sentence is procedurally unreasonable if the District Court committed a procedural

error such as "failing to calculate (or improperly calculating) the guidelines range, treating the guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or [as occurred here] failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Trinidad–Acosta*, 773 F.3d 298, 309 (1st Cir. 2014).

If no procedural unreasonableness is found, the appeal review will focus on the substantive reasonableness of the sentence:

> In considering objections to a sentence's substantive reasonableness, [this Court] examine[s] the district court's contemporaneous oral explanation of the sentence, 18 U.S.C. §3553(c), its near-contemporaneous written statement of reasons, id. § 3553(c)(2), and what fairly can be gleaned by comparing what was argued by the parties or proffered in the PSI Report with what the sentencing court ultimately did.

*United States v. Martin*, 520 F.3d 87, 93 (1st Cir 2008). Therefore, a sentence is substantively reasonable if it reflects "a plausible sentencing rationale and a defensible result." *United States v. De la Cruz-Gutierrez*, 881 F. 3d 221, 227 (1st Cir. 2018) (*quoting United States v. Martin*, 520 F.3d 87, 96 (1st Cir 2008)). This Court has emphasized that it will not

substitute the District Court's Judgment for its own. Instead, its review will examine the reasonable of the sentence in "light of the totality of the circumstances". *United States v. King*, 741 F.3d 305, 308 (1st Cir. 2014).

### Argument

Here, trial counsel objected to the procedural and substantive unreasonable of the sentence. The District Court adopted the government's argument that the sentence was reasonable under *United States v. Pantojas*, 800 F.3d 54 (1st Cir. 2015). *Pantojas* does not support the sentence. It is both procedurally and substantively unreasonable.

The government invoked *Pantojas* for an upward variant sentence because of repeat gun violence. As this Court wrote in *Panotjas*, however, the *Pantojas* District Court had premised the variant sentence upon criminal conduct that was different from that for which he was being sentenced in the instant case.

This Court noted in affirming "that Pantojas was investigated for murder using one of the firearms for which he was charged in this case and that a Commonwealth of Puerto Rico court had found probable cause

against him for the murder, for the illegal possession of the weapon, and for pointing and firing the weapon."

The Court stated that *Pantojas* was "different from others" because "Pantojas has been accused of murder using that pistol", writing:

> This is one of those cases of a young man with a pistol. The case is different from others because in this case Mr. Pantojas has been accused of murder using that pistol. It's but an example of how Puerto Rico has a homicide rate four times the national rate and two times that of virtually every other state.
>
> Violent crimes and murders are occurring at all hours of the day, at any place on the island, on congested public highways.
>
> We have drive-by shootings just about every day, in shopping centers, on public basketball courts and even at cultural events like the Fiesta de San Sebastián. Firearms like the one Mr. Pantojas possessed are present everywhere, obtained by youngsters, like Mr. Pantojas, who have absolutely no training in the proper use of them and who appear not to have the means to purchase them.
>
> Thanks to the firearms initiative which the Department of Justice of Puerto Rico and the U.S. Attorney's Office have implemented, the number of murders has gone down since 2011....
>
> I have to consider Puerto Rico's high firearms and violent crime rate to impose a sentence in this case, just like I have to consider the fact that probable cause was found against Mr. Pantojas for murder and weapons violations.
> . . .

> This is not a case of a gun crime being aberrational, as
> perhaps it would be in a community relatively free of that type
> of crime. Gun crimes are, unfortunately, pervasive
> throughout the island. This is one of them.

As this Court noted, the district court ultimately sentenced Pantojas to

60 months' imprisonment — "two times the top of his GSR" - 12 months

less than imposed here.

Counsel recognizes that appellate reasonableness review is

deferential. But unlike Pantojas, here, the Guidelines fully took into

account defendant's conduct.

As *Pantojas* explained: "We review sentencing decisions imposed

under the advisory Guidelines, whether outside or inside the applicable

GSR, for reasonableness. *United States v. Turbides-Leonardo*, 468 F.3d

34, 40 (1st Cir. 2006). Generally, we apply the deferential abuse of

discretion standard in evaluating the reasonableness of a sentence." The

Court cited *Gall, supra, and United States v. Del Valle-Rodríguez, supra,*

761 F.3d at 176 (1st Cir. 2014)).

However, as *Pantojas* reiterated, "[i]t is possible for a sentencing

judge to focus too much on the community and too little on the individual

and, thus, impose a sentence that cannot withstand the test of procedural reasonableness," *id*. at 24. Though in *Pantojas,* the district court had considered community-based factors "at some length," it was "clear [to the Court] from the record that its primary consideration in imposing a sentence above the applicable GSR was the fact that a Commonwealth of Puerto Rico court had found probable cause against Pantojas for a murder committed with the weapon he was charged with possessing."[1]

Other characteristics discussed in *Pantojas* show that there was less "serious consideration to [appellant's] history and characteristics" in this case, than was given in that the *Pantojas* case. There, the Court

---

[1] This Court wrote in *Pantojas* that the district court's primary focus on the murder charge was "evident from the following district court statement:"

> [C]onsidering that probable cause was determined that Mr. Pantojas committed a murder using the weapon for which he is charged in this case, [the court] will impose a sentence above the guideline range. That sentence above the guideline range is the sentence that would reflect the seriousness of the offense, would promote respect for the law, would protect the public from further crimes by Mr. Pantojas and would address the issue of deterrence and punishment.

emphasized the defendant's "drug use and prior arrest for drug possession".

Appellant's prior history here concerned two instances of aggressive conduct with weapons, with penalties that left the young Guzman uneducated and untreated by "the State".

Unlike *Pantojas,* here the district court's sentencing rationale was "dominated" and "influenced" by community-based considerations. See *Narváez-Soto*, 773 F.3d at 287 ("The analytic centerpiece of the court's sentencing rationale was the crime of conviction, and there is no satisfactory footing for a conclusion that community-based considerations either dominated or improperly influenced the fashioning of the sentence."). Moreover, unlike *Pantojas*, the Court focused on defendant's "proclivity", which is not a §3553 factor.

That the defendant had "proclivity" (whatever that means) does not provide a valid basis to vary the sentence. There is no definition of "proclivity" under the Guidelines or 3553.

According to Merriam-Webster dictionary, "proclivity" is "an inclination or predisposition toward something especially: a strong

inherent inclination toward something objectionable."

https://www.merriam-webster.com/dictionary/proclivity.

Sentencing on the basis of a judge's view of a defendant's "proclivity" to reoffend is formless, and the sentence should be vacated not only because it is unreasonably long, but also for the same reasons that prompted the Second Circuit to reverse a sentence for viewing child pornography because the judge believed that offenders had a genetic predisposition to reoffend (and to do worse than merely viewing child pornography.) In *United States v. Cossey*, 632 F.3d 82 (2d Cir. 2011), the sentencing Court had stated his belief that the defendant would re-offend because of a genetic predisposition. The Second Circuit reversed, holding that the sentencing court must rely on actual conduct, not on a personally-held belief in what make a defendant "tick", so to speak.

Here, Judge Dominguez similarly crossed the line between what the sentencing laws and Guidelines allow, and his personal beliefs in the correlation between a defendant's conduct and some personality trait that science (and the Guidelines) have not identified.

There was no basis for a variant sentencing here. The sentence of 41-51 months was deemed reasonable by the Sentencing Commission for a young man in Criminal History Category II who commits a crime of brandishing a firing a weapon as a prohibited person.

To the extent that this Court's decision in *Flores-Machiote* anticipated that, with greater punishment for gun crimes, notions of general deterrence would reduce gun crime, PRPD's statistics demonstrate that violent crimes *increased* after this Court allowed variant sentences to attack gun crimes. January 2018 ended with 20 additional reported murders and 40 more reported carjacking than the same period in 2017 – a 26% and 12% increase during that period. See https://www.policia.pr.gov/division-estadisticas-de-la-criminalidad/. The notion that general deterrence is served by steeper sentences is very much in doubt.

Further, again, although Judge Dominguez stated that appellant had been punished previously and still re-offended, in fact, according to the PSR, appellant had *not* been incarcerated previously. His jail term had been suspended.

Not only, therefore, was there no basis to find that appellant "knew" he was a prior felon – because he did not actually serve a jail term of more than a year – but he had not "let down" the "system" in re-offending despite punishment, because he had not been punished *or* helped during a prior criminal sentence.

Justification for the variant sentence is lacking. The sentence should be vacated.

## CONCLUSION

The indictment should be dismissed for failure to allege that defendant knew he was a prohibited person. Alternatively, the plea should be vacated. The sentence is unreasonable, and should be vacated.

Dated: October 1, 2019        /s/_____
                                Vivian Shevitz – Bar No. 101025
                                CJA counsel for Appellant
                                CARLOS GUZMAN-MERCED
                                46 Truesdale Lake Drive
                                South Salem, New York 10590
                                914 763 2122
                                Fax: 888 859-0158
                                Email: vivian@shevitzlaw.com

AO 245B (Rev. 02/18)    Judgment in a Criminal Case
                        Sheet 1

# UNITED STATES DISTRICT COURT

District of Puerto Rico

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| CARLOS J. GUZMAN-MERCED | ) | Case Number:  3:17-CR-0302-01 (DRD) |
| | ) | USM Number:  50287-069 |
| | ) | Alex Omar Rosa-Ambert |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    One (1) of Indictment on 04/02/2018.

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 922(g)(1) and 924(a)(2) | Prohibited Person in Possession of a Firearm: Convicted Felon | 5/2/2017 | 1 |
| | | | |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)                          ☐ is    ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

10/31/2018
Date of Imposition of Judgment

S/ Daniel R. Dominguez
Signature of Judge

Daniel R. Dominguez, Senior U.S. District Judge
Name and Title of Judge

10/31/2018
Date

# JUDGMENT

12

AO 245B (Rev. 02/18)   Judgment in Criminal Case
Sheet 2 — Imprisonment

| | Judgment — Page | 2 | of | 7 |

DEFENDANT:   CARLOS J. GUZMAN-MERCED
CASE NUMBER:   3:17-CR-0302-01 (DRD)

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

**SEVENTY-TWO (72) MONTHS.  DEFENDANT SHALL RECEIVE CREDIT FOR TIME SERVED.**

☑   The court makes the following orders and recommendations to the Bureau of Prisons:

The Court recommends that defendant be designated to a facility in North Carolina area or New York area.
Defendant shall be afforded mental health evaluation and treatment.
Defendant shall be afforded maximum drug treatment.

☑   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____   ☐ a.m.   ☐ p.m.   on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

# JUDGMENT

13

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __7__

DEFENDANT:   CARLOS J. GUZMAN-MERCED
CASE NUMBER:   3:17-CR-0302-01 (DRD)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

**THREE (3) YEARS.**

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

# JUDGMENT

14

AO 245B (Rev. 02/18)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |

DEFENDANT:  CARLOS J. GUZMAN-MERCED
CASE NUMBER:  3:17-CR-0302-01 (DRD)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____          Date _____

# JUDGMENT

AO 245B(Rev. 02/18)   Judgment in a Criminal Case
Sheet 3D — Supervised Release

DEFENDANT:  CARLOS J. GUZMAN-MERCED
CASE NUMBER:  3:17-CR-0302-01 (DRD)

# SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. The defendant shall not unlawfully possess controlled substances.

3. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.

4. The defendant shall participate in transitional and reentry support services, including cognitive behavioral treatment services, under the guidance and supervision of the Probation Officer. The defendant shall remain in the services until satisfactorily discharged by the service provider with the approval of the Probation Officer.

5. The defendant shall participate in a program or course of study aimed at improving educational level and/or complete a vocational training program. In the alternative, she shall participate in a job placement program recommended by the probation officer.

6. The defendant shall provide the probation officer access to any financial information upon request.

7. The defendant shall participate in an approved mental health treatment program for evaluation and/or treatment services determination. If deemed necessary, the treatment will be arranged by the officer in consultation with the treatment provider; the modality, duration, and intensity of treatment will be based on the risks and needs identified. The defendant will contribute to the costs of services rendered by means of co-payment, based on his/her ability to pay or the availability of third party payment.

8. The defendant shall submit to a search of his person, property, house, residence, vehicles, papers, computer, other electronic communication or data storage devices or media, and effects (as defined in Title 18, U.S.C., Section 1030(e)(1)), to search at any time, with our without a warrant, by the probation officer, and if necessary, with the assistance of any other law enforcement officer (in the lawful discharge of the supervision functions of the probation officer) with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release. The probation officer may seize any electronic device which will be subject to further forensic investigation/analyses. Failure to submit to such a search and seizure, may be grounds for revocation. The defendant shall warn any other residents or occupants that their premises may be subject to search pursuant to this condition. In consideration of the Supreme Court's ruling in Riley v. California, the court will order that any search of the defendants phone by probation, while the defendant is on supervised release, be performed only if there is reasonable articulable suspicion that a specific phone owned or used by the defendant contains evidence of a crime or violation of release conditions, was used in furtherance of a crime, or was specifically used during the actual commission of a crime.

9. The defendant shall participate in an approved substance abuse monitoring and/or treatment services program. The defendant shall refrain from the unlawful use of controlled substances and submit to a drug test within fifteen (15) days of release; thereafter, submit to random drug testing, no less than three (3) samples during the supervision period and not to exceed 104 samples per year accordance with the Drug Aftercare Program Policy of the U.S. Probation Office approved by this Court. If deemed necessary, the treatment will be arranged by the officer in consultation with the treatment provider. The defendant is required to contribute to the cost of services rendered (co-payment) in an amount arranged by the Probation Officer based on the ability to pay or availability of third party payment.

# JUDGMENT

AO 245B (Rev. 02/18)    Judgment in a Criminal Case
        Sheet 5 — Criminal Monetary Penalties

Judgment — Page    6    of    7

DEFENDANT: CARLOS J. GUZMAN-MERCED
CASE NUMBER: 3:17-CR-0302-01 (DRD)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | $ 100.00 | $ | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTALS | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement   $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine ☐ restitution.

☐ the interest requirement for the    ☐ fine ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

# JUDGMENT

17

Case: 18-2146  Case: 3:17-cr-00302-DRD6  Document: 67  Filed 10/31/18  Page 7 of Entry ID: 6215532
AO 245B (Rev. 02/18) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page   7   of   7

DEFENDANT:  CARLOS J. GUZMAN-MERCED
CASE NUMBER:  3:17-CR-0302-01 (DRD)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☐  Lump sum payment of $ ___100.00___  due immediately, balance due

    ☐  not later than _____ , or
    ☑  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☑ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:

    Special Monetary Assessment in the amount of $100.00 to be paid upon release.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:

    The defendant shall forfeit to the United States any firearms and ammunition involved in the commission of the offense.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

JUDGMENT

18

## CERTIFICATE OF COMPLIANCE

This brief has been prepared using 14 point, Century Schoolbook and contains 9,684 words (including the tables, that need not be counted) according to the "Word" program.


/s/ <u>Vivian Shevitz</u>

## Certificate of Service

Rule 4 Local Rules Governing Electronic Filing provides that the Notice of Docket Activity that is generated by the court's electronic filing system constitutes service of the filed document on all ECF Filers. The system identifies which parties in a particular case are ECF filers, such as the U.S. Attorney.

Therefore, I, Vivian Shevitz, certify that a true and correct copy of the Appellant's Brief will be served by ECF on the US Attorney handling this matter by virtue of the fact that I electronically filed Appellant's brief.

/s/<u>Vivian Shevitz</u>